U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
DEC 11 2012
CLERK, U.S. DISTRICT COURT
By_____
    Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| DEVON ENTERPRISES, LLC D/B/A ALLIANCE BUS CHARTERS, <br><br> Plaintiff, <br><br> VS. <br><br> ARLINGTON INDEPENDENT SCHOOL DISTRICT, <br><br> Defendant. | § <br> § <br> § <br> § <br> § <br> § NO. 4:11-CV-671-A <br> § <br> § <br> § <br> § <br> § |

MEMORANDUM OPINION
and
ORDER

Came on for consideration the motion for summary judgment filed by defendant, Arlington Independent School District, as to all claims and causes of action brought against it by plaintiff, Devon Enterprises, LLC d/b/a Alliance Bus Charters. Plaintiff filed a response, and defendant filed a reply. Having considered all of the parties' filings, as well as the summary judgment record and applicable legal authorities, the court concludes that the summary judgment motion should be granted.

I.

Plaintiff's Claims

Plaintiff initiated this action by filing its original complaint on September 22, 2011, alleging that defendant refused to employ it as an approved bus carrier solely on the basis of

Case 4:11-cv-00671-A Document 53 Filed 12/11/12 Page 2 of 18 PageID 444

its petition in bankruptcy. Plaintiff asserted claims and causes of action against defendant for violations of the Bankruptcy Code, 11 U.S.C. § 525(a), and for violations of § 44.031 of the Texas Education Code. Plaintiff sought injunctive relief, monetary damages, and attorney's fees.

II.

## The Motion for Summary Judgment

Defendant contends that it is entitled to summary judgment on the following grounds: defendant did not deny plaintiff a contract for bus service solely on the basis of its bankruptcy; plaintiff is not entitled to damages; plaintiff's claims are untimely; defendant's actions did not violate the competitive bidding provisions of the Texas Education Code; and, plaintiff is not entitled to injunctive relief.

III.

## Undisputed Facts

The following facts are undisputed in the summary judgment record:

At the time of the events giving rise to this litigation, plaintiff was a charter bus company providing bus services to area school districts and others. Plaintiff was an approved charter bus carrier for defendant during the school years of 2007-2008, 2008-2009, and 2009-2010. On October 20, 2010,

plaintiff filed a petition in bankruptcy under Chapter 11 of the United States Bankruptcy Code.

On October 26, 2010, defendant began accepting bids for its charter bus carrier contract for the 2010-2011 school year (the "11-45 Bid"). In reviewing plaintiff's submission for the 11-45 Bid, Betty Knox ("Knox"), defendant's then-Director of Purchasing, noted in plaintiff's submission a printout from the United States Department of Transportation ("U.S. DOT") indicating that plaintiff had reported an injury accident during the previous reporting period. Shortly after defendant began accepting submissions on the 11-45 Bid, an employee of a competing charter bus company sent an email to Knox, to which it attached documents indicating that plaintiff had filed a petition in bankruptcy and that plaintiff's authority to operate as a bus carrier had been suspended by the U.S. DOT in July 2010 and reinstated in August 2010. Knox and her supervisor, Anthony Drollinger ("Drollinger"), defendant's Executive Director of Finance, discussed these issues.

Defendant's employees were also aware that in December 2009 one of plaintiff's buses had broken down in El Paso, Texas, while transporting defendant's students from Arlington to Phoenix, Arizona. Plaintiff arranged for an unauthorized carrier to drive defendant's students the remainder of the trip from El Paso to

3

Phoenix. Knox and Drollinger were also aware of plaintiff's ongoing difficulty maintaining on file a valid certificate of insurance, as required for any bus company that contracted to provide services to defendant.

Knox and Drollinger also discussed the foregoing safety issues with Cindy Powell ("Powell"), an assistant superintendent. Around November 2, 2010, Knox and Drollinger telephoned Richard Bastow ("Bastow"), plaintiff's president and owner, to inform him that they were not going to recommend plaintiff as an approved vendor for the 11-45 Bid. Following the telephone conversation, Bastow asked his bankruptcy attorney, Eric Liepins ("Liepins"), to send Knox a letter explaining plaintiff's Chapter 11 bankruptcy filing and plaintiff's obligations while operating during the pendency of the bankruptcy.

On November 4, 2010, Knox sent the following email to Bastow:

> Richard--We would be glad to meet with you face-to-face to discuss Alliance Bus Charter's bankruptcy. However, we are moving forward with our recommendation to the Board of Trustees at their meeting this evening not to use Alliance Bus Charters at this time. As per our discussion with you on Tuesday, the slightest risk to student safety is not negotiable. Additionally, as stated by Mr. Drollinger, perception of the parents and the community regarding District contractors is an important element in our decision making process. We look forward to working with you again once the company's financial situation changes.

Pl.'s App. at 57.

Knox, Drollinger, and Powell did not recommend that plaintiff be approved as a charter bus provider under the 11-45 Bid, and the Board of Trustees did not include plaintiff on the list of approved vendors at its meeting on November 4, 2010.

On December 17, 2010, Powell sent the following email to defendant's then-superintendent, Jerry McCullough ("McCullough"):

> I confirmed with Betty Knox that Alliance was the company that we did not award a bid to for charter bus services because they are currently in bankruptcy.

Id. at 59.

Defendant began accepting bids for the 2011-2012 school year in June of 2011. Plaintiff submitted a bid that showed no accidents during the previous year. Nevertheless, to alleviate concerns about safety that had arisen during the previous bidding process, defendant requested and checked references for plaintiff. No further problems were reported. Plaintiff was again recommended to be approved as a provider of charter bus services for defendant and was included on the final list of approved bus carriers for the 2011-2012 school year. Although the exact date is unclear, as of at least January 2012 plaintiff was no longer operating as a charter bus company.

IV.

Applicable Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. Id. at 324. See also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party

6

as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 597 (1986).

V.

Analysis

A. <u>No Violation of the Bankruptcy Code</u>

The Bankruptcy Code provides that, except under certain circumstances not applicable here,

> a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act . . ., solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

11 U.S.C. § 525(a). The Fifth Circuit has adopted a "narrow construction approach" requiring proof that the alleged discrimination was caused "solely" by the debtor's bankruptcy. <u>In re Exquisito Servs., Inc.</u>, 823 F.2d 151, 153-54 (5th Cir. 1987). As noted by the Fifth Circuit, section 525(a)'s

7

"prohibition does not extend so far as to prohibit examination of the factors surrounding the bankruptcy, the imposition of financial responsibility rules if they are not imposed only on former bankrupts, or the examination of prospective financial condition or managerial ability." Id. at 154 (citing House Report at 6126). Nor does section 525(a) prevent a government entity from considering factors such as "future financial responsibility or ability, and does not prohibit imposition of requirements such as net capital rules, if applied nondiscriminatorily." Id. at 153 (citing Senate Report at 5867).

Plaintiff primarily relies on three sources of evidence it contends establish defendant's violation of section 525(a): the November 2, 2010 email from Knox to Bastow ("Knox Email"); the December 17, 2010 email from Powell to McCullough ("Powell Email"); and testimony from Bastow. As for the Knox Email, plaintiff directs the court to the final sentence, which reads: "We look forward to working with you again once the company's financial situation changes." Def.'s App. at 89. Although plaintiff focuses on this sentence, it cannot be considered in isolation. In the same email Knox also indicated that she had discussed with Bastow defendant's concerns about safety: "As per our discussion with you on Tuesday, the slightest risk to student safety is not negotiable." Id. The court cannot simply ignore,

as plaintiff apparently has, the indication in the Knox Email that Knox was concerned about safety issues pertaining to plaintiff's services.

Nor can the court ignore the evidence of safety issues in the record. It is undisputed that plaintiff's submission for the 11-45 Bid included information about an injury accident involving one of plaintiff's buses during the prior year. It is also undisputed that in December 2009, one of plaintiff's buses broke down in El Paso, Texas, while plaintiff was transporting a group of defendant's students to Phoenix, Arizona, and that plaintiff engaged an unauthorized service to transport the students from El Paso to Phoenix without proper approval from defendant. Also in the record is evidence of plaintiff's ongoing problems maintaining on file a certificate of insurance, as well as evidence of at least one fire on one of plaintiff's buses.

Plaintiff does not specifically address the safety issues in its response to the motion for summary judgment, except to assert that defendant manufactured its concerns over safety as a post-hoc justification for its discriminatory actions towards plaintiff regarding the 11-45 Bid. The basis of this assertion appears to be plaintiff's contention that defendant conducted no real investigation into the incidents, and that it did not investigate safety issues concerning other vendors. However,

plaintiff has directed the court to no authority requiring that defendant perform a particular type of investigation before relying on its knowledge of the safety-related incidents in its decision-making process. Nor has plaintiff directed the court to summary judgment evidence showing that other charter bus vendors had similar safety problems of which defendant was aware but chose to ignore. Defendant's evidence, including the Knox Email and the affidavits of Drollinger and Knox, shows that defendant considered these issues in conjunction with plaintiff's submission for the 11-45 Bid, and the court does not find contravening evidence in the summary judgment record. Evidence that safety concerns played at least some role in defendant's decision not to recommend plaintiff for the 11-45 Bid defeats plaintiff's claim that defendant failed to recommend it as a vendor "solely" because of its bankruptcy.

Nor does Bastow's testimony establish that plaintiff's bankruptcy was the sole reason plaintiff was not included on the list of approved vendors under the 11-45 Bid. Bastow's deposition testimony tends to establish, as plaintiff contends, that bankruptcy was a topic of conversation during the November 2, 2010 telephone conversation between Bastow, Knox, and Drollinger. However, Bastow's testimony also shows that at least a portion of the conversation involved Knox and Drollinger's

10

concerns that parents and/or the public would have a perception that plaintiff's buses were unsafe:

> Q. And it's your testimony here today that you never discussed any of the accidents--the accident, the fire, or the maintenance issues with Mr. Drollinger or Ms. Knox in your conversation with them on November 2nd.
>
> A. No, they never had any conversation with me over them. They just said "perception of safety."[1]
>
> . . . .
>
> Q. I asked you about the safety issues. And my question was: Did they tell you that they perceived, or parents perceived, that your buses were not safe?
>
> A. No. They did not say they perceived my buses weren't safe. They said the perception of the public.
>
> . . . .
>
> Q. Are you saying that they were saying to you that the public would have a perception that the buses wouldn't be safe because you were bankrupt?
>
> A. I don't know if they used those exact words, but that's the feeling I got.

Pl.'s App. at 117-18, 120. Bastow's testimony thus shows that

---

[1] This testimony is contradicted by Bastow's testimony later in the deposition following discussion of the Knox Email:

> Q. Isn't it true that in the email Ms. Knox says, "Per our discussion with you on Tuesday, the slightest risk to student safety is not negotiable"?
> . . . .
> Q. And you're not denying that that's what was discussed, are you?
>
> A. I'm not denying that, but there was more than that that originally was discussed during that same conversation.

Def.'s App. at 39-40.

defendant was concerned that the public might perceive plaintiff's buses to be unsafe. This testimony supports a conclusion that safety issues were at least part of the reason that Knox and Drollinger did not recommend plaintiff to be included as an approved vendor for the 11-45 Bid, and that the failure to recommend plaintiff as a vendor was not due "solely" to plaintiff's bankruptcy.

To bolster its contention that plaintiff's bankruptcy was the focus of the November 2, 2010 conversation plaintiff relies on the letter sent to Knox from Liepins, plaintiff's bankruptcy attorney, at Bastow's request following that conversation. The letter explains plaintiff's obligations while in the bankruptcy process, and tends to show that plaintiff's bankruptcy likely did enter into the November 2 conversation. What it does not do, however, is negate other evidence that safety concerns, or concerns over the public's perception of safety, also entered into defendant's decision not to include plaintiff on the list of approved vendors for the 11-45 Bid. Plaintiff must establish that its bankruptcy was the "sole" reason for its rejection. The Liepins letter fails in that regard.

Plaintiff's final piece of evidence is the Powell Email stating she confirmed that plaintiff "was the company that we did not award a bid to for charter bus services because they are

12

currently in bankruptcy." Pl.'s App. at 59. The court considers the email to be in the nature of a stray remark. To be probative of discrimination a comment must do more than mention a protected class or subject. Rather, it must also bear other indicia of discrimination, such as proximity in time to the adverse decision at issue. See, e.g., Auguster v. Vermilion Parish Sch. Bd., 249 F.3d 400, 404-05 (5th Cir. 2001) (considering stray remarks in the context of employment discrimination). Such temporal proximity is lacking here.

Powell sent the email to McCullough approximately six weeks after the conversation between Knox, Drollinger, and Bastow and six weeks after the Board of Trustees voted on a list of vendors for the 11-45 Bid that did not include plaintiff. Lacking temporal proximity to the decision on the 11-45 Bid, the Powell Email also cannot be considered reflective of all the contemporaneous issues discussed between Knox, Drollinger, and Powell during late October and early November when they considered whether to include plaintiff on the list submitted to the Board of Trustees. Nor did Powell participate in the telephone conversation between Knox, Drollinger, and Bastow on November 2, 2010, so the email cannot be considered a timely reflection of the substance of that conversation. Finally, considered in light of other evidence in the record that safety

13

concerns played a role in defendant's decision not to recommend plaintiff for the 11-45 Bid, the Powell Email does not establish that defendant failed to recommend plaintiff solely because of its bankruptcy filing.

Plaintiff would have the court consider all of the foregoing as "direct evidence of discriminatory motive [that] is automatically sufficient to defeat a summary judgment motion." Pl.'s Resp. to Mot. for Summ. J. at 13. In support of this argument plaintiff relies on cases discussing the shifting evidentiary burdens in employment discrimination cases. See id. (discussing Wilkerson v. Columbus Separate Sch. Dist., 985 F.2d 815 (5th Cir. 1993), and Brown v. East Miss. Elec. Power Ass'n, 989 F.2d 858 (5th Cir. 1993)). Such reliance is misplaced. Plaintiff has directed the court to no Fifth Circuit precedent applying a burden-shifting analysis to a case under section 525(a).

Nor does plaintiff's argument about direct evidence carry the day under section 525(a). Here, the issue is whether plaintiff can prove that plaintiff's bankruptcy was the sole reason for defendant's allegedly discriminatory action. In re Exquisito Servs., 823 F.2d at 153-54. See also Laracuente v. Chase Manhattan Bank, 891 F.2d 17, 23 (1st Cir. 1989) (in case under 11 U.S.C. § 525(b), rejecting burden-shifting approach and

14

requiring that plaintiff prove she was terminated solely because of her bankruptcy). Plaintiff has failed to meet its burden under section 525(a).

B.  <u>Claim Under the Texas Education Code</u>

As of the date defendant accepted submissions for the 11-45 Bid, section 44.031 of the Texas Education Code provided the following guidelines for school district contracts:

> (b) Except as provided by this subchapter, in determining to whom to award a contract, the district shall consider:
>
> (1) the purchase price;
>
> (2) the reputation of the vendor and of the vendor's goods or services;
>
> (3) the quality of the vendor's goods or services;
>
> (4) the extent to which the goods or services meet the district's needs;
>
> (5) the vendor's past relationship with the district;
>
> (6) the impact on the ability of the district to comply with laws and rules relating to historically underutilized businesses;
>
> (7) the total long-term cost to the district to acquire the vendor's goods or services; and
>
> (8) any other relevant factor specifically listed in the request for bids or proposals.

Tex. Educ. Code Ann. § 44.031(b) (West 2006). Although these are the only factors a school district may consider in awarding a bid, the district "has the discretion to apply one, some, or all

15

of those criteria," and it may accord them whatever weight or consideration it chooses. R.G.V. Vending v. Weslaco Indep. Sch. Dist., 995 S.W.2d 897, 899 (Tex. App.--Corpus Christi 1999, no pet.)

In his affidavit Drollinger explained that defendant considered plaintiff's submission for the 11-45 Bid in light of the section 44.031(b) criteria. Drollinger concluded that the company's poor performance, including the breakdown of a bus in El Paso that stranded defendant's students, the company's history of a bus fire, a self-reported injury accident, and difficulties maintaining certificates of insurance, all implicated section 44.031(b) criteria such as the reputation and quality of the company's goods and services, the extent to which the goods and services met defendant's needs, and the company's past history with the school district. Because of these factors, Drollinger did not recommend plaintiff to be an approved bidder for the 2010-2011 school year. This evidence establishes that defendant considered the section 44.031(b) criteria in evaluating plaintiff's submission for the 11-45 Bid.

Plaintiff's response to this argument comprises a single line in its brief, where plaintiff contends "[a]s shown herein, AISD used a criterion to reject Alliance Bus (the bankruptcy), which is not a permitted criterion under the Texas Education

16

of those criteria," and it may accord them whatever weight or consideration it chooses. R.G.V. Vending v. Weslaco Indep. Sch. Dist., 995 S.W.2d 897, 899 (Tex. App.--Corpus Christi 1999, no pet.)

In his affidavit Drollinger explained that defendant considered plaintiff's submission for the 11-45 Bid in light of the section 44.031(b) criteria. Drollinger concluded that the company's poor performance, including the breakdown of a bus in El Paso that stranded defendant's students, the company's history of a bus fire, a self-reported injury accident, and difficulties maintaining certificates of insurance, all implicated section 44.031(b) criteria such as the reputation and quality of the company's goods and services, the extent to which the goods and services met defendant's needs, and the company's past history with the school district. Because of these factors, Drollinger did not recommend plaintiff to be an approved bidder for the 2010-2011 school year. This evidence establishes that defendant considered the section 44.031(b) criteria in evaluating plaintiff's submission for the 11-45 Bid.

Plaintiff's response to this argument is apparently its contention that "[a]s shown herein, AISD used a criterion to reject Alliance Bus (the bankruptcy), which is not a permitted criterion under the Texas Education Code." Pl.'s Resp. to Mot.

16

for Summ. J. at 20. Plaintiff directs the court to no evidence contravening Drollinger's affidavit describing how defendant applied the section 44.031(b) criteria to plaintiff's submission for the 11-45 Bid. Plaintiff must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. Celotex Corp., 477 U.S. at 324. Plaintiff's failure to do so warrants summary judgment for defendant on plaintiff's claim under the Texas Education Code.

* * * *

Given the court's disposition of plaintiff's claims, it need not reach defendant's arguments in the summary judgment motion concerning laches or that plaintiff is entitled to no damages.

VI.

Order

Therefore,

The court ORDERS that defendant's motion for summary judgment be, and is hereby, granted, and that all claims and causes of action asserted by plaintiff, Devon Enterprises, LLC d/b/a Alliance Bus Charters, against defendant, Arlington Independent School District, be, and are hereby, dismissed with prejudice.

SIGNED December 11, 2012.

JOHN McBRYDE
United States District Judge

17